IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-12-FL

| | |
|---|---|
| TIMOTHY VANBUREN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Timothy VanBuren ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Plaintiff responded to Defendant's motion and the time for further filings has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-29] be granted, Defendant's Motion for Judgment on the Pleadings [DE-31] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on October 9, 2008 (Tr. 79), alleging disability beginning November 30, 2006 (Tr. 162). The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 79-80, 97-98.) On September 20, 2010, a hearing was held before Administrative Law Judge ("ALJ") Richard E.

Perlowski, who issued an unfavorable ruling on October 22, 2010. (Tr. 42, 47.) On May 27, 2013, the Appeals Council denied Plaintiff's request for review. Plaintiff appealed to this court, and the court remanded the matter to the Commissioner specifically to discuss the findings of Drs. Catherine Duncan, R. Peters, Brian Szura, Kevin Speer, and Cara Siegel, discuss the return-to-work testing, and weigh the opinions of Drs. Duncan and Peters. (Tr. 676-84.) On September 16, 2013, a second hearing was held before ALJ Perlowski, who issued an unfavorable ruling on October 17, 2013. (Tr. 612, 620.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant

evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.     Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since November 30, 2006. (Tr. 604.) Next, the ALJ determined Plaintiff had the following severe impairments: "degenerative disc disease, carpal tunnel syndrome, degenerative joint disease, and history of hernia surgery." (*Id.*) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to perform light work "except the claimant needs the ability to alternate sit and stand such that he would not be in either position for 30 minutes at a time; needs to avoid overhead reaching and work requiring constant handling or fingering; and would need a job where there is no frequent oral communications (based on a recent hearing test)." (Tr. 604.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 608.) At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as cleaner. (Tr. 610.) Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the state and national economies. (Tr. 610-11.)

### IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on three grounds. Plaintiff first contends that the ALJ failed to give appropriate consideration to the medical opinion of Plaintiff's treating physician, Dr. Catherine Duncan. Second, Plaintiff asserts that the ALJ failed to give appropriate consideration to Plaintiff's return-to-work testing results in Plaintiff's RFC. Lastly, Plaintiff claims the ALJ erred in his analysis of Plaintiff's credibility.

#### A. Treating Physician

First, Plaintiff contends that the ALJ erred in the weight he credited to Plaintiff's treating physician, Dr. Duncan. On three separate occasions, Dr. Duncan opined that Plaintiff could lift no more than ten pounds and should avoid pushing, pulling and bending. The ALJ gave Dr. Duncan's opinion limited weight stating, "the opinions expressed are quite conclusory, providing

very little explanation of the evidence or physical exam results relied on in forming that opinion." (Tr. 609.)

Ordinarily, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2) (2013). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given to the treating physician's opinion by applying the following factors: (1) the length of treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

Here, the ALJ's reasoning behind giving Dr. Duncan's opinion limited weight is not supported by substantial evidence. The records indicate that Plaintiff has consistently complained of low back pain. Plaintiff saw Dr. Duncan over a two-year span of time, during

which her opinion of Plaintiff's work capabilities never changed. On three separate occasions, she restricted Plaintiff to lifting no more than ten pounds. Although the evaluations were done on checklist forms, treatment notes spanning the same time period were included in the record, some of which are dated the same day as the work restrictions.

On Plaintiff's first visit with Dr. Duncan, on February 13, 2007, Dr. Duncan diagnosed Plaintiff with a herniated disc and right lumbar radiculopathy. (Tr. 309.) She further noted the following objective evidence:

> His musculoskeletal exam reveals a normal gait pattern, His lumbar range of motion is reduced to 20 degrees of flexion and 0 degrees of extension. Strength is good throughout the bilateral lower extremities. He has decreased sensation in the right lower extremity along the L4 and L5 dermatones to pinprick. He has tenderness at the right PSIS and sciatic notches. DTRs are 2+ to bilateral patellar and Achilles' tendons. The remainder of the exam is unremarkable.

(Tr. 309.)

Eleven visits later, on June 23, 2008, Dr. Duncan again placed Plaintiff under the same restrictions indicating in her impressions that Plaintiff experiences "chronic low back pain," "neuropathic symptoms in the lower extremities with normal EMG/nerve conduction velocity study," and "somatic dysfunction of the right sacroiliac joint." (Tr. 330.) Three months and two visits later, Dr. Duncan again noted Plaintiff's work limitations were unchanged and that he could not lift more than ten pounds. (Tr. 450.) Dr. Duncan's impressions were that Plaintiff suffered from "right sacroiliac dysfunction with worsening right side low back pain" and "neuropathic symptoms in the bilateral lower extremities." (Tr. 450.) Dr. Duncan determined that a lumbar-sacral orthosis was medically necessary to treat Plaintiff's chronic back pain. (*Id.*)

Dr. Duncan's assessments of Plaintiff's work capabilities are not stand-alone checklist forms as the ALJ suggests, and there is no indication that Dr. Duncan doubted Plaintiff's back pain. Dr. Duncan's three assessments are accompanied by two years of treatment notes, with

6

diagnoses and impressions that support her assessments. Moreover, her opinions are consistent with the opinions of Plaintiff's other medical providers and the return-to-work testing conducted in December 2008. Therefore, the ALJ's reasoning that Dr. Duncan's assessment is "conclusory" and, thus, entitled to limited weight is not supported by substantial evidence.

### B. Return-to-Work Testing

Secondly, Plaintiff asserts the ALJ erred in his analysis of Plaintiff's return-to-work testing done on December 16, 2008. The ALJ gave the return-to-work testing results limited weight, stating:

> [O]n October 7, 2008, the claimant had good range of motion with no signs of atrophy. On October 20, 2008, the claimant declined surgery recommended for carpal tunnel surgery. A pain management plan was recommended, which the claimant also declined. As related to the return to work testing, there are no validity testes [sic] reported, thus it is difficult to determine whether the claimant gave his best efforts during testing. Although the tester noted the claimant cannot lift overhead greater than 10 pounds and "will sit for five minutes after 20 minutes of standing," the tester did not present sufficient evidence to support these findings. Nonetheless, the undersigned has incorporated overhead reaching and a sit/stand option into the residual functional capacity finding.

(Tr. 609.)

The above analysis is not supported by substantial evidence. First, while the October 7, 2008 exam to which the ALJ refers notes Plaintiff's shoulder was improved, the focus of the exam was Plaintiff's carpel tunnel syndrome. (Tr. 447-48.) Further, though there were no "validity tests" reported for the return-to-work testing, the testing was done at the direction of Plaintiff's treating physician, Dr. Cara Siegel. (Tr. 486-87.) In her Dr. Siege noted her impression that Plaintiff was experiencing "chronic back and lower extremity pain" and that despite the measures he has taken, the pain was persistent. (Tr. 486-87.) Dr. Seigel specifically stated, "I do not recommend a formal FCE, would rather the patient have a 30 minutes return-to-work test and return at the level." (Tr. 486.) Additionally, the record states that "[d]ynamic lifting results

are recorded and recommended lifting restrictions are determined by the employee's maximum effort in various positions minus 20%. We feel it is safer for the employee to have a 20% reserve when doing repetitive material handling on the job." (Tr. 555.)

During the testing, Plaintiff's heart rate was monitored "to record evidence of stress on the body indicating pain increase or need to reduce activity level." (Tr. 555.)The test itself was signed by both an "evaluator" and a "supervising therapist." (Tr. 554.) In the objective portion of the test, it is noted "[Patient] was very anxious throughout testing. He had to stop and take a couple breaks during testing due to pain. [Patient] had a lot of external factors indicating pain; deep breathing, facial expressions, head in hands." (Tr. 553.) There is no indication that Plaintiff did not give his maximum effort or that the test administrators doubted his effort or questioned the results. Further, the results of the return-to-work testing are one of three opinions limiting Plaintiff to overhead lifting of no more than ten pounds. (Tr. 247-49, 450.) The only medical statement that opines Plaintiff can lift up to twenty pounds seems focused on the functional limitations associated with his shoulder and does not seem to take into account Plaintiff's chronic back pain. (Tr. 446.) Thus, the ALJ's determination that the return-to-work testing is entitled to limited weight for the reasons stated is not supported by substantial evidence.

### C. Credibility

Plaintiff next claims that the ALJ erred in his credibility assessment in that Plaintiff's testimony was consistent with the medical evidence of record. In assessing a claimant's credibility, the ALJ must follow a two-step process. First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95. Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms. *Id.* at 595. The Social Security regulations require that an

8

Case 5:14-cv-00012-FL   Document 34   Filed 12/23/14   Page 8 of 10

ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, at *1. The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;

(2) The location, duration, frequency, and intensity of . . . pain or other symptoms;

(3) Precipitating and aggravating factors;

(4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;

(5) Treatment, other than medication, received for relief of pain or other symptoms;

(6) Any measures used to relieve pain or other symptoms; and

(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3) (2013); SSR 96-7p, 1996 WL 374186, at *3.

The ALJ found Plaintiff not fully credible to the extent his statements are inconsistent with the RFC. The ALJ explained his analysis of Plaintiff's testimony and the medical evidence, stating:

> [T]he undersigned has considered the claimant's argument that he has not received treatment from a doctor recently due to a lack of medical insurance. However, the record fails to reflect the claimant availed himself of assistance

> through free or reduced-fee health clinics. Further, he reported going to the hospital for treatment, however, notes show only sparse hospital or emergency room treatment or visits for medication prescriptions since 2010. His hearing deficit is being treated by use of a hearing aid, he has not been recommended for further surgery concerning his hernia and groin complaints, no further shoulder complications have been documented, he has not received surgery as recommended for his left carpal tunnel syndrome, and has mostly used medication to treat his back pain.

(Tr. 608.) Further, the ALJ analyzed the medical record, as well as Plaintiff's testimony in assessing Plaintiff's credibility. Thus, the ALJ properly evaluated Plaintiff's credibility and, based on the evidence of record, determined that Plaintiff's statements concerning his inability to work were not fully credible.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-29] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-31] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 23rd day of December 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge